**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

JOSEPH COPPOLA,

        **Petitioner,**

    **v.**                              **CIVIL ACTION NO. 3:15cv96**
                                           **(GROH)**

TERRY O'BRIEN, WARDEN,

        **Respondent.**


## REPORT AND RECOMMENDATION

### I. BACKGROUND

On August 5, 2015, the Petitioner, an inmate now housed at USP Lewisburg, filed a *pro se* Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order restoring his Good Time Credits and immediate release to supervised release. ECF No. 1 at 8. By Order entered August 31, 2015, the Court directed the Respondent to show cause why the petition should not be granted. ECF No. 10. On October 14, 2015, the Respondent filed a Motion to Dismiss or Motion for Summary Judgment and Response to Order to Show Cause. ECF No. 27. On October 15, 2015, a Roseboro Notice was issued. ECF No. 29. On December 2, 2015, the Petitioner filed a Response in Opposition. ECF No. 34. On March 31, 2016, the Respondent was ordered to filed a Supplemental Response. ECF No. 41. On May 2, 2015, the Respondent filed his Supplemental Response [ECF No. 54], and on May 3, 2015, the Respondent file an Addendum to Supplemental Response. ECF No. 55.

## II. __FACTS__[1]

On January 7, 2003, in the District of Nevada, the Petitioner was indicted in a two-count criminal indictment on two counts of bank robbery in violation of 18 U.S.C. § 2113(a). On March 29, 2004, following a five (5) day trial, during which he represented himself with standby counsel, the Petitioner was convicted of both counts. ECF No. 105. On April 1, 2005, the Petitioner was committed to the custody of the United States Bureau of Prisons ("BOP") for a total term of 188 months to be followed by a 3-year term of supervised release, and was ordered to pay $4,547.95 in restitution. ECF No 152. The Petitioner's current projected release date according to the BOP website is January 2, 2018.[2]

The Petitioner appealed his conviction and sentence and raised the following issues: claims of prosecutorial misconduct; violations of his Sixth Amendment right to self representation; judicial bias; a challenge to the photographic lineup; a challenge to the four-level sentencing enhancement for the threat of death (two levels each, one for brandishing the weapon and one for verbally making a death threat); a two-level U.S.S.G. § 3C1.1 obstruction of justice enhancement for perjury at trial and repeated attempts to influence a witness to commit perjury; and a four-level upward departure based on U.S.S.G. § 5K2.0(3) for his plan to kidnap, torture, and kill the prosecutor and FBI agent in his case. The Ninth Circuit denied his claims and affirmed his conviction and sentence. U.S. v. Coppola, 198 Fed. Appx. 269 (9th Cir. August 24, 2006). With respect to the §§ 3C1.1 and

---

[1]Unless otherwise noted, the ECF numbers referred to in this section are from the Petitioner's criminal docket from the District of Nevada available on PACER. See 2:03-cr-10-LRH-PAL-1

[2]As of December 2, 2009, the Petitioner's projected release date was April 13, 2017. See 2:03cr100, District of Nevada, ECF No. 229 at 5. The Court can only assume that the Petitioner's release date has been delayed due to the loss of GCT and/or non-vested GCT.

5K2.0(3) enhancements, the Court of Appeals noted that even though the Petitioner never attempted to carry out the kidnap/murder plans, his planning of the same:

> demonstrates his personal characteristics and suggests that he is a danger to the public and does not have proper respect for the law. His perjury, that tends to improperly influence witnesses, and refusal to take responsibility for his misconduct throughout the robberies and trial also suggest that he is a danger, and has little respect for the law, and is in need of deterrence.

198 Fed. Appx. at 635.

When the Petitioner filed the instant habeas petition, he was confined to U.S.P. Hazelton, which is located in Bruceton Mills, West Virginia. Just over one month later, the Petitioner filed a Notice of Change of Address, indicating that he had been transferred to U.S.P. Lewisburg. ECF No. 11.[3]

Exhibits of record, indicate that the Petitioner has been charged with a number of disciplinary infractions which have resulted in the loss of numerous days of Good Conduct Time (GCT) and forfeiture of non-vested GCT.[4] More specifically, the Petitioner was issued:

1. Incident Report No. 138937 for Code Violation 203, Threatening Bodily Harm and Code Violation 307, Refusing to Obey an Order, which resulted in the loss of 27 days GCT following a Disciplinary Hearing Officer ("DHO") hearing on October 26, 2005;

2. Incident Report No. 1615540 for Code Violation 212A, Engaging in Group Demonstration and Code Violation 119, Using Equipment Contrary to Instructions, which resulted in the loss of 27 days GCT following a DHO hearing on July 26, 2007;

---

[3]The Petitioner remains at U.S.P. Lewisburg according to the BOP website at bop.gov.

[4]The Court has only set forth the details of those incident reports which resulted in the loss of GCT or the forfeiture of non-vested GCT.

3. Incident Report No. 1923455 for Code Violation 306, Refusing Work/Program Assignment, which resulted in the loss of 13 days of GCT following a DHO hearing on August 14, 2009;

4. Incident Report No. 1908792 for Code Violation 306, Refusing Work/Program Assignation, which resulted in the loss of 13 days GCT following a DHO hearing on September 17, 2009;

5. Incident Report No. 1909398 for Code Violation 307, Refusing an Order, which resulted in the loss of 13 days GCT following a DHO hearing on September 17, 2009;

6. Incident Report No. 1909704 for Code Violation 208, Interfering with Security Devices, and Code Violation 329, Destroying Property over $100 which resulted in the loss of 1 day GCT and forfeiture of 39 days non-vested GCT following a DHO hearing on September 17, 2009;

7. Incident Report No. 1911155 for Code Violation 208, Interfering with a Security Device and Code Violation 307, Refusing to Obey an Order which resulted in the loss of 11 days GCT and forfeiture of 56 days of non-vested GCT following a DHO hearing on September 17, 2009;

8. Incident Report No. 1911318 for Code Violation 218, Destroying Property Over $100 and Code 307, Refusing to Obey an Order which resulted in the loss of 31 days GCT and 37 days of non-vested GCT following a DHO hearing on September 17, 2009;

9. Incident Report No. 1983544 for Code Violation 299, Disruptive Conduct-High which resulted in the loss of 27 days GCT following a DHO hearing on March 4, 2010;

10. Incident Report No. 2053178 for Code Violation 203, Threatening Bodily Harm which resulted in the loss of 27 days GCT following a DHO hearing on September 15, 2010;

11. Incident Report No 2495662 for Code Violation 296, Mail Abuse, Disrupt Monitoring which resulted in the loss of 27 days GCT following a DHO hearing on October 8, 2013; and

4

12. Incident Report No. 2498841 for Code Violation 218, Destroying Property over $100 which resulted in the loss of 27 days GCT following a DHO hearing on October 15, 2013; ECF No. 27-3 at 14-22.

In addition, the Petitioner received two incident reports for violations which occurred on November 8, 2013. The first, Incident Report No. 2514156, was for Code Violation 103, Setting a Fire, which resulted in the loss 41 days GCT and forfeiture of 41 days non-vested GCT following a DHO hearing on November 20, 2013, at 11:05 a.m. ECF No. 27-3 at 2-5. The second, Incident Report No. 2514246, was for Code Violation 104, Possession of a Dangerous Weapon, which resulted in the loss of 41 days GCT and forfeiture of 41 days non-vested GCT following a DHO hearing on November 20, 2013 at 11:10 a.m. ECF No. 27-4 at 2-6.

### III. CONTENTIONS OF THE PARTIES

The Petitioner alleges that the BOP failed to treat his known serious mental disorder and, instead, violated the Americans with Disabilities Act and its own policy in revoking over two (2) years of earned and unearned GCT. The Petitioner elaborates on this allegation by stating that he suffers from bipolar disorder, which causes drastic mood swings and is a life time disorder which was diagnosed by the United States Navy in 1990. ECF No. 1 at 5.

The Petitioner further alleges that the BOP has denied him Due Process and arbitrarily imposed punishment involving numerous incident reports by denying him timely incident reports, unit disciplinary committees, disciplinary hearings and appeals as a result of transfers and lack of available forms. The Petitioner elaborates on this allegation by stating that he is often in "24/7 lockdown staff disrespect and antagonize [him], thereby triggering a Bipolar mood swing. Then staff lable [sic] [him] Bipolar and deny Due Process, failing to perform as required by the Disciplinary Policy." ECF No. 1 at 6.

The Petitioner also alleges that since 2005, the BOP, in violation of its own policy, has kept him confined in a higher custody level than warranted. As a result, he unnecessarily is put in surroundings of increased danger and has been subjected to several assaults. In support of this allegation, the Petitioner notes that in 2013, staff at FCI Phoenix artificially inflated his custody score from 19 to 26 and then sent him to USP Hazelton. Additionally, the Petitioner contends that despite correcting his custody score to a 22, which would warrant "medium custody," the BOP is sending him to the Special Management Unit ("SMU"), where he will be held in lock down 23 hours a day.[5] ECF No. 1 at 6.

Finally, the Petitioner alleges that the BOP has unlawfully relied on false labels and false information to his detriment in violation of the Privacy Act. In support of the allegation, the Petitioner contends that the BOP wrongfully classified him as a sex offender from 2005 until 2014, when his case manager at USP Hazelton corrected his classification. The Petitioner further contends that his criminal history score was wrong until it was corrected in 2015. ECF No. 1 at 6-7.

In response to the petition, the Respondent argues that the Petitioner received the rights afforded him pursuant to Wolff v. McDonnell, 418 U.S. 539 (1974). In expounding on this argument, the Respondent confined his analysis to Incident Report No. 2514156, dated November 8, 2013, and Incident Report No. 2514246, also dated November 8, 2013. In addition, the Respondent maintains that the evidence relied upon by the DHO was sufficient to support a finding of guilt. Accordingly, the Respondent maintains that the petition, as it relates to allegations regarding loss of GCT should be dismissed.

---

[5]In fact, the Petitioner was transferred to USP Lewisburg approximately one month after filing this petition. A review of the BOP website, indicates that there is a SMU at Lewisburg. However, the Court is unable to determine whether the petitioner is, in fact, confined in the SMU.

The Respondent also argues that the Petitioner has no protected liberty interest in his institution designation. Therefore, the Respondent argues that even assuming the Petitioner's transfer was the result of a change in security points due to his disciplinary findings, his claim alleging an inappropriate designation is without merit and should be dismissed.

In his reply to the <u>Roseboro</u> Notice, and in opposition to the Respondent's Motion to Dismiss or for Summary Judgment, the Petitioner argues that the Respondent "made no genuine material rebuttal of fact against any claim that he advanced with the possible exception of 164 days of GCT and non-vested GCT for incidents/Incident Report #(s) 2514246 Possession of a Dangerous Weapon. . . . and 2514156 setting a fire." ECF No. 34-3. Therefore, the Petitioner argues the 23 months of GCT were admittedly taken without Due Process of law. In addition, the Petitioner points out the DHO reports regarding those two incident reports demonstrate that the reports were never delivered to him, thus denying him the right to appeal.

The Petitioner also reiterates that he suffers from bipolar disorder as well as OCD and racing thoughts as defined in BOP Policy Statement No. 5310.16. The Petitioner contends that pursuant to C.F.R. § 541.6(b) and BOP Policy Statement No. 5270.09, a prisoner who suffers from a severe mental illness will not be disciplined when he was unable to appreciate the nature and quality or wrongfulness of the act. The Petitioner maintains that a single one page, unsigned, report from "psychology" is insufficient to overcome the fact that: (1) he was diagnosed by the United States Navy as suffering from bipolar disorder; (2) that the BOP knew of this illness and failed to treat him according to its own policies; (3) instead of treatment, the BOP continued to impose punishment for behavior which was a direct consequence of his bipolar disorder; and (4) the BOP applied false labels which caused him to be targeted for abuse/assaults by staff and inmates alike, receive false incident reports with denial of due process, receiving higher custody transfers which resulted in

purposeful taking/loss of legal property on several occasions. ECF No. 34 at 9-12.

Because the Petitioner alleges in his response that he did not receive copies of the DHO reports for Incident Number 2514246 and Incident Number 2514156, and was therefore unable to appeal those decisions, the Court ordered the Respondent to file a supplemental response providing proof that the Petitioner received copies of those reports. In addition, the Respondent was ordered to explain why the DHO reports for each of those incidents indicated that the Petitioner was being charged with four separate incident reports. In addition, the Respondent was ordered to explain why no analysis was made of the DHO hearings conducted on October 15, 2013; October 8, 2013; September 15, 2010; March 4, 2010; September 17, 2009; August 14, 2009; July 26, 2007; and October 26, 2005, all of which resulted in the loss of GCT and/or non-vested GCT.[6] Finally, the Respondent was ordered to explain why no analysis was made of the DHO hearings conducted on March 13, 2015 and March 26, 2015.

In his supplemental response, the Respondent explains that no analysis was made of the DHO hearings on October 15, 2013; October 8, 2013; September 15, 2010; March 4, 2010; September 17, 2009; August 14, 2009; and October 26, 2005, because the Petitioner did not exhaust his administrative remedies regarding those hearings. Moreover, the Respondent notes that the Petitioner has only exhausted two (2) administrative remedies regarding DHO findings, and of those, only one was exhausted prior to August 5, 2015, the day on which the pending § 2241 was filed. The Respondent does acknowledge that the Petitioner properly exhausted his administrative remedies

---

[6]Although the earlier portion of the Order contained the correct dates, the conclusion of the order inadvertently used the date October 27, 2015, and the hearing conducted on July 26, 2007, was improperly identified as July 25, 2007.

regarding Incident Report No. 1615540.[7]  Without conceding that there were deficiencies in the discipline process and DHO findings, the Respondent acknowledges being unable to locate a copy of the discipline paperwork and DHO Report.  Therefore, the Respondent has found it appropriate to expunge the incident report along with the sanctions that were imposed. ECF No. 54-3 at 3. With respect to Incident Report Numbers 2514246 and 2514156, the Respondent acknowledges that neither copy of the DHO reports carries a signature demonstrating that the reports were delivered to the Petitioner. The Respondent maintains the position as forth in his initial Motion to Dismiss or, in the alternative, Motion for Summary Judgment, that the Petitioner refused to sign the reports.  The Respondent indicates that pursuant to policy, the Petitioner is entitled to appeal the findings of the DHO within 20 days of receipt of the report.  Without conceding that the Petitioner did not receive copies of the reports in the past, the Respondent indicates he will deliver copies of both DHO reports to the Petitioner, document the delivery, and will accept his timely administrative remedy submission to the Regional Office level to appeal both DHO decisions. ECF No. 54 at 2.  However, the Respondent contends that because the Petitioner has not exhausted his administrative remedies with respect to these two Incident Reports, he is not entitled to their expungement. Id.  Finally, the Respondent acknowledges that the DHO Reports for Incident Numbers 2514246 and 2514156 each reference that the Petitioner "initially appeared [at the hearing] to discuss some initial issues [he] wanted the DHO to consider regarding four incident reports that [he] was charged with."ECF No. 27-3 at 4, ECF No. 27-4 at 4.  However, although four incident reports were referenced, the

[7]Incident Report No. 1615540 charged the Petitioner with conduct occurring on June 29, 2007, which involved the  violation of Code 212A, Engaging in Group Demonstration and resulted in the loss of 27 days GCT following a DHO hearing on July 26, 2007.  The Incident Report also charged the Petitioner with violation of Code 319, Using Equipment Contrary to Instructions.  The Petitioner was found guilty of that code violation but was not sanctioned with the loss of GCT, but instead, with the loss of phone privileges for 90 days. ECF No. 27-3.

Respondent points out that the DHO reports clearly state that the Respondent was being charged with only one prohibited offense per each incident report and only received sanctions pertaining to each single charge. ECF No. 27-3 at 5, ECF No. 27-4 at 5.

On May 3, 2016, the Respondent filed an Addendum to his Supplemental Response, in which he alleges that he did not address the DHO hearings conducted on March 13, 2015, or March 26, 2015, because the Petitioner never exhausted his administrative remedies regarding those two hearings. ECF No. 55-1 at 3.

## IV. <u>STANDARD OF REVIEW</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint

need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal

<u>Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

## V. <u>ANALYSIS</u>

### A. Exhaustion of Administrative Grievances

A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit. <u>See</u> <u>McCling v. Shearin</u>, 90 Fed.Appx. 444, 445 (4th Cir. 2004). Moreover, the "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." <u>Id</u>.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving **written notification** of the disciplinary action. <u>See</u> 28 C.F.R. § 542.14(d)(2) (emphasis added). If unsatisfied with that response, the petitioner may file an appeal with the Central Office within 30 days of the date the Regional Director signed the response. <u>Id</u>. Where an appeal is rejected at the Regional Level, and the inmate is not given the opportunity to corrects the defect and resubmit, the

inmate may appeal that rejection to the Central Office. See 28 C.F.R. § 542.17(c). The Central Office may affirm the rejection, may direct the submission be accepted at the lower level, or may accept the submission as filed. Id. "Appeal to the General Counsel is the final administrative appeal." See 28 C.F.R. § 542.15(a).

The Respondent has supplied an affidavit with attachments that establishes that since his incarceration, the Petitioner has filed sixty-one (61) administrative remedy submissions. Of those, the Petitioner has exhausted only two (2) administrative remedies regarding the findings of a DHO. One, dealing with Remedy ID No. 1615540[8] is going to be expunged as noted by the Respondent in his Supplemental Response, and the 27 days of GCT lost as the result of the DHO hearing will be reinstated. The other exhausted administrative remedy regarding the findings of a DHO was exhausted on February 18, 2016, and concerned a DHO hearing conducted on December 14, 2015. ECF No. 54-2 at 4. Therefore, not only was this administrative remedy not exhausted until after the instant § 2241 petition was filed, the DHO hearing in question did not occur until after the petition was filed. Therefore, to the extent the Petitioner wishes to contest the results of that DHO hearing, he must file a habeas petition in the United States District Court for the Middle District of Pennsylvania which has jurisdiction over the Petitioner's current custodian, the warden of USP Lewisburg.

The Court is mindful that the Petitioner makes vague allegations that he was thwarted in the

---

[8]Remedy ID numbers are assigned by the BOP to administrative grievances. The remedy ID number remains the same at each level of the grievance process. The letter following the number indicates the grievance level, and the numeral indicates the sequence of filing. For instance, R-1 indicates that this is the first time that particular grievance was filed at the Regional level, and A-1 indicates the first time at the Office of General Counsel. If a grievance is rejected, and the prisoner is permitted to correct deficiencies and re-file, the numeral 2 would appear, but the Remedy ID number would remain the same.

appeals process due to transfers and lack of forms. ECF No. 1 at 6. However, the Petitioner provides no detail. In fact, other than that statement, he provides nothing more. He identifies no institution at which forms were unavailable, nor how such transfers interfered with his ability to exhaust the grievance process. Moreover, the exhibits provided by the Respondent demonstrate that the Petitioner had forms and sufficient time within which to exhaust the process.

The Petitioner began filing administrative grievances on August 26, 2005, while incarcerated at Victorville. ECF No. 55-2 at 2. The first administrative grievance regarding a DHO hearing was filed with the Mid-Atlantic Region from Hazelton and concerned the hearing conducted on July 26, 2007. Id. REMEDY ID 460008-R1. It was rejected on August 23, 2007. Id. The Petitioner filed another appeal to the Mid-Atlantic Region from Hazelton regarding the hearing conducted on July 26, 2007, where it was denied on January 9, 2008. Id. REMEDY ID 469145-R1. He then appealed to the Central Office, where it was denied on March 18, 2008. Id. REMEDY ID 469145-A1. This is the one administrative grievance that was exhausted before this petition was filed, and is the one which has been, or will be, expunged.

The exhibits also establish that the Petitioner filed several appeals with the Western Region in October, November and December of 2009, from Victorville regarding the DHO hearings conducted on September 17, 2009. ECF No. 55-2 at 3, REMEDY IDs 562067-R1 (Code 208); 563318-R1 (Code 218); 571625-R1 (Code 306); 571745-R1 (Code 208/329); 571747-R1 (Code 307). All of these appeals were denied, and despite the fact that the Petitioner apparently remained at Victorville until at least January 8, 2010, he did not appeal any of these denials to the Central Office.

The Petitioner did not file another appeal of a DHO hearing until April 6, 2015[9], when he filed an appeal with the Mid-Atlantic Region from Hazelton, which was rejected on April 9, 2015. ECF No. 55-2 at 3, REMEDY ID 816891-R1. He filed another appeal regarding a DHO hearing with the Mid-Atlantic Region from Hazelton on June 24. 2015, which was rejected on that same date. Id. REMEDY ID 825813-R1. He re-filed this remedy with the Mid-Atlantic Region on July 13, 2015, and it was again rejected on July 15, 2015. ECF No. 5502 at 5, REMEDY ID 825813-R2. Then, despite being moved to Lewisburg, the Petitioner filed an appeal with the Central Office on August 17, 2015,and it was rejected on September 16, 2015. Id. REMEDY ID 825813-A1.

The Petitioner then filed several appeals of DHO hearings in the Northeast Region from Lewisburg beginning on October 7, 2015. ECF No. 55-2 at 5. However, each of these was initiated after his petition was filed with this Court on August 5, 2015. Therefore, to the extent that he may have exhausted or be in the process of exhausting his administrative grievances regarding DHO hearings conducted in September and December of 2015, this Court is without jurisdiction to hear the same.

Finally, the Court notes that the Respondent undertook an analysis of the BOP discipline process and the due process procedure required under Wolff v. McDonnell, 418 U.S. 539 (1974). The Respondent then applied this analysis to the DHO hearings conducted on November 20, 2013, with regard to Incident Report Nos. 2514156 and 2514246. The Respondent then concludes that the Petitioner was afforded all the due process required under Wolff, and the evidence relied upon by the DHO was sufficient to support a finding of guilt in both cases. However, given that it is now clear that the Petitioner did not exhaust his administrative grievances with respect to either of these

_____

[9]This despite the fact that the Petitioner had six DHO hearings between March 4, 2010, and November 20, 2013, and lost 272 days of either GCT or non-vested GCT.

hearings, and the Respondent has indicated that the Petitioner will be provided a copy of the hearing reports and an opportunity to file grievances, the Court declines to make a substantive review of these two disciplinary hearings.[10]

### B. Petitioner's Alleged Mental Disorder

The Petitioner alleges that he suffers from bipolar disorder, a serious mental disorder. The Petitioner further alleges that the BOP knew that he suffered from this condition, but violated the Americans with Disabilities Act ("ADA") and its own policy in unlawfully revoking over two (2) years of earned and unearned good time.

The ADA, as it applies to public entities, is codified at 42 U.S.C. §§ 12131 et seq. The ADA prohibits a "public entity" from discriminating against "a qualified individual with a disability: on account of the individual's disability. 42 U.S.C. § 12132. A § 2241 petition is the correct mechanism by which to challenge the BOP's execution of a sentence, particularly the removal of good conduct time. However, the Petitioner's claims under the ADA assert that the BOP took action against him on the basis of a disability. Independent civil causes of action exist to remedy that alleged discrimination, and the Petitioner improperly raises ADA claims herein.

The Petitioner also relies on BOP Program Statement ("PS") 5310.16, Treatment and Care of Inmate with Mental Illness {ECF No. 34-2] and 28 C.F.R. § 541.6 for his position that he was improperly disciplined for conduct which resulted from his bipolar disorder. PS 5310.16 provides

---

[10]By requiring the Petitioner to attempt proper resolution of his claim within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the Petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process.

"policy, procedures, standards, and guidelines for the delivery of mental health service to inmates with mental health illness in all Federal Bureau of Prisons (Bureau) correctional facilities." ECF No. 34-2 at 1. 28 C.F.R. § 541.6 provides in relevant part as follows:

> If it appears you are mentally ill at any stage of the discipline process, you will be examined by health staff.

> (a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or can not help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.

> (b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you are unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make his decision based on evidence, including evidence presented by mental health staff.

The Petitioner repeatedly argues that he suffers from bipolar disorder which was diagnosed by the United States Navy in 1990. However, he provides no proof for that claim. Moreover, fourteen years later, on August 25, 2004, following his conviction in the District of Nevada, the United States filed a motion for a psychiatric examination to determine whether the Petitioner was competent for sentencing. 2:03-cr-00010-LRH-PAL, ECF No. 134. The Petitioner, through counsel, opposed the motion. Id., ECF No. 135. However, the Court granted the motion "in light of the Defendant's recent unusual behavior." ECF No. 136 at 3. Although the results of the psychiatric examination are not available to this Court, it can only be assumed that the Petitioner was found competent inasmuch as he was sentenced on February 16, 2005.

Moreover, prior to the DHO hearings conducted on November 20, 2013, the DHO requested a psychological evaluation on the Petitioner. L.H. Laird, Ph.D., Chief of Psychological Services,

concluded that the Petitioner was responsible for his conduct. By way of explanation, Dr. Laird noted that "Mr. Coppola reports a prior diagnosis of Bipolar Disorder; however, his behaviors at this time appear to reflect low frustration tolerance and stem from his reaction to situations in which he perceives are 'unjust.' ECF No. 27-3 at 27.

In addition, the Court has reviewed medical records filed by the Petitioner in a suit filed in the Middle District of Pennsylvania on May 11, 2016, regarding medical care at USP Lewisburg. Those records date back to at least August 7, 2012, and none contain any reference to any mental disorder. See 3:16-cv-00837-EMK-LQ, Middle District of Pennsylvania, ECF No. 3-1.

Accordingly, the Court concludes that but for the Petitioner's self-serving statement that he suffers from bipolar disorder, there is no evidence of record to support such a finding. Accordingly, there is no basis for vacating the Petitioner's disciplinary proceedings under either BOP PS 5310.16 or 28 C.F.R. § 541.6

### C. Custody Classification

Section 2241 provides a remedy where a prisoner "is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a 2241 petition, a prisoner may seek relief from his parole, computation of his sentence or disciplinary actions taken against him. "[T]he Supreme Court [has] held that the writ of habeas corpus was the exclusive civil remedy for prisoners seeking release from custody." Glaus v. Anderson, 408 F.3d 382, 386 (7th Cir. 2005). Also worth noting is that at the "heart of habeas corpus" petitions, the petitioner is challenging "the fact or duration of his physical confinement," or "seeking immediate release or a speedier release from active confinement." Preiser v. Rodriguez, 411 U.S. 475, 498 (1973). On the other hand, a Bivens action is used to hold federal officers "individually liable for constitutional violations." Starr v. Baca, 625 F.3d 1202 (9th Cir. 2011). Even more generally, a Bivens action

allows individuals to sue a federal actor because he or she violated a right guaranteed by the Constitution or a federal law. See <u>Bivens</u>, 403 U.S. at 392-94. Further, " [a]lthough ' more limited in some respects,' a <u>Bivens</u> action is the federal analog to an action against state or local officials under § 1983." <u>Id.</u> (quoting <u>Hartman v. Moore</u>, 547 U.S. 250, 254 n.2 (2006)); <u>see Preiser</u>, 411 U.S. at 499 ( "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not the fact or length of his custody." )

Here, the Petitioner alleges no facts to demonstrate that the BOP's custody classification has affected the fact or duration of his confinement. For example, he does not allege that his right to earn good conduct time has been affected by his custody classification. Nor does he allege that he is being denied the right to participate in any program, the successful completion of which affects the length of his sentence. Instead, the Petitioner's allegations challenge the place of his confinement – a claim implicating only the conditions of confinement. In sum, the Petitioner's claims are not an attack on, nor are they related in any way to, the execution of his sentence. To pursue the claims he raises herein, the Petitioner must file a lawsuit governed by <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 399 (1971).[11]

Moreover, even if the Court found that the Petitioner's custody level is incorrect, such an error does not rise to the level of a due process violation. Federal inmates do not possess a protected liberty interest in security classification. <u>See Posey v. Dewalt</u>, 86 F.Supp.2d 565, 571 (E.D. Va 1999); <u>Grayson v. Federal Bureau of Prisons</u>, 2011 WL 7154384, *3 (N.D. W.Va. July 22, 2011)(Kaull). Instead, security classification is reserved to the sole discretion of prison officials. <u>See</u> <u>Slezakv. Evatt</u>, 21 F.3d 590, 594 (4th Cir. 1994).

---

[11]In <u>Bivens</u>, the Supreme Court created a counterpart to §1983 so that individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Because petitioner is a federal prisoner, he must therefore file a <u>Bivens</u> action as opposed to one under §1983.

## VI.  RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgment [ECF No. 27] be **GRANTED**; the Petitioner's Motion to Strike Late Ex Parte Filing and Notice of Null and Void Order [ECF No. 31] be **DENIED AS MOOT**; the Petitioner's *Pro Se* Motion pursuant to 28 U.S.C. § 1657 for an Expedited Ruling on the Merits; Summary Judgment pursuant to Rule 56(c) [ECF No. 40] be **DENIED AS MOOT**; the Petitioner's Motions for an Immediate Hearing on Objection to Order Requiring Respondent to Supplement His Filings and for Appointment of Counsel [ECF No. 46 & 47] be **DENIED AS MOOT;** and the Petitioner's §2241 petition [ECF No.1] be **DENIED and DISMISSED WITH PREJUDICE.**  It is further **RECOMMENDED** that within ten (10) days of entry of an Order adopting this Report and Recommendation, the Respondent be required to file proof that the DHO reports for Incident Reports Nos. 2514246 and 2514156 have been delivered to the Petitioner and Incident Report No. 1615540 has been expunged with restoration of the 27 days GCT attributable thereto.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Gina M Groh, Chief United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C.

§ 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to provide a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: June 1, 2016.

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE